| | EFILED Document<br>CO Denver County District Court 2nd JD<br>Filing Date: Feb 21 2012 3:58PM MST<br>Filing ID: 42622852<br>Review Clerk: Nik Zender |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202 | |
| RICHFIELD HOSPITALITY, INC.,<br>Plaintiff,<br><br>v.<br><br>CHARTER ONE HOTELS AND RESORTS, INC., STEVE COOK, and THOMAS FARINACCI,<br>Defendants. | ▲ COURT USE ONLY ▲ |
| | Case No.: 2011CV3916<br><br>Courtroom: 280 |
| **ORDER** ||

THIS MATTER comes before the court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

**Factual Background**

The Plaintiff is a Colorado corporation that operates, manages and develops hotels. (Compl. ¶7.) One of the hotels that Plaintiff managed was the Glidden House Inn located in Cleveland, Ohio. (Id. ¶8.) Until July, 2010, Defendant Steve Cook ("Cook") was Vice President of Operations for Plaintiff. (Id. ¶10.) Cook had been employed by Plaintiff or its predecessors for approximately 10 years. (Id.) As part of his employment with Richfield Hospitality Services, Inc. ("Services"), Cook executed a Nondisclosure Agreement on April 1, 2000. Plaintiff claims to be a successor in interest to Services. (Id. ¶12.)

In July, 2010, Cook resigned and took a position with Charter One, a competitor of Plaintiff. (Id. ¶11.) Defendant Thomas Farinacci ("Farinacci") was also an employee of Plaintiff and managed the Glidden House Inn. Plaintiffs allege that Cook solicited Farinacci to provide Plaintiff's proprietary information to Cook and that Farinacci "poisoned" Plaintiff's relationship with the Glidden House Inn. (Id. ¶¶21-23.) Charter One was awarded the new management contract with the Glidden House Inn, and Farinacci was hired to manage the property by Charter One.

Plaintiff alleges claims of trade secret misappropriation, civil conspiracy, interference with contract, and injunctive relief against all the defendants, and alleges additional claims against certain individual defendants.

*Defendants' Motion*

Defendants have moved to dismiss the Complaint for lack of personal jurisdiction.[1] Defendants argue that none of them have sufficient minimum contacts in Colorado. Charter One, for its part, claims that it never has done business in Colorado, and has no interests here. (Decl. of Scott Busby (Ex. A to Motion) at ¶5.) Farinacci admits to being employed by Plaintiff, but also claims to have no contacts with Colorado, and that any meetings with Plaintiff in connection with his position as the manager of the Glidden House Inn took place in Ohio. (Decl. of Tom Farinacci (Ex. C to Motion) at ¶¶4, 6 and 7.) Cook is a Florida resident. He admits being employed by Plaintiff and owned a second home in Colorado until 2009. While working for Plaintiff, Cook claims that he only worked from Florida and never traveled to Colorado for meetings or other purposes while he was employed by Plaintiff. (Decl. of Steve Cook (Ex. B to motion) at ¶¶4 and 5.)

*Evidence at Hearing*

On February 10, 2012, I held a hearing on two issues: 1) whether any Richfield entity signed Cook's Nondisclosure Agreement; and 2) whether Plaintiff succeeded to or otherwise is entitled to enforce the Nondisclosure Agreement.[2] At the hearing, Plaintiff provided evidence that no Richfield entity ever signed Nondisclosure Agreements. The evidence showed that Plaintiff and its predecessor companies took the position that because it was the signing employee who was undertaking the obligations, there was no need for the company to sign. Plaintiffs proved by a preponderance of evidence at the hearing that no company ever signed the agreements, and that in the company's (Services or Plaintiff) view, no signature was necessary.[3] Notably, the Nondisclosure Agreement contains a Colorado forum selection clause.

Plaintiff also presented extensive evidence from its former in-house counsel regarding the myriad and complex internal company transactions that ultimately resulted in Plaintiff's creation. In short, Plaintiff's ultimate corporate parents and Services contributed certain assets to "Bermuda Group." "Bermuda Group" changed its name to Swan, and Swan changed its name to Richfield Hospitality, Inc., the plaintiff in this matter. *See* hearing Exs. 8-11.[4] What is unclear to me is how Cook fits into these transactions. Cook's name does not appear on Schedule 5.1 of

---

[1] The motion was originally filed in federal court after the case was removed. The federal court had not decided the motion when the case was remanded back to this court.

[2] The order setting this hearing and defining the issues to be heard was issued by my predecessor in Courtroom 280.

[3] When a hearing is held on jurisdictional issues, a plaintiff's burden of proof is "preponderance of the evidence." In contrast, when reviewing a jurisdictional question on the pleadings and other documents alone, plaintiff is only held to a "prima facie" showing. *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 66 (Colo. 2008).

[4] I realize that this is a gross over-simplification. However, for the purposes of the instant Motion, further explication seems unnecessary for the reasons set forth below.

Exhibit 8, the document creating Bermuda Group, which one might expect if he was actually employed by Swan and Plaintiff. There further appears to be some uncertainty within Plaintiff as to whether Cook's Nondisclosure Agreement transferred to Plaintiff. *See* Ex. 12 (Feb. 9, 2012, assignment of Cook's Nondisclosure Agreement to Plaintiff).

Ultimately, Cook agrees that he was "employed by *Plaintiff* until July 2010." (Decl. of Steve Cook (Ex. B to motion) at ¶5 (emphasis supplied).) Moreover, Plaintiff's Senior Vice President of Human Resources and Risk Management, Ms. Dierenbach, testified that all of these transactions were "back office" changes, and that they were seamless to the employees. She also testified that Plaintiff took the position that employees were bound by the Nondisclosure Agreements that they signed for Services. I therefore find that Plaintiff has proved by a preponderance that it is entitled to enforce Cook's Nondisclosure Agreement.

**Legal Analysis**

In determining whether this court has jurisdiction,

> [t]he first inquiry is whether the complaint alleges "[t]he commission of a tortious act within this state." *See* § 13-1-124(1)(b). In *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 524 (Colo.1989), we stated that the term "tortious act" as used in the long arm statute "implies the total act embodying both the cause and its effect." *Accord Vandermee v. District Court*, 164 Colo. 117, 122, 433 P.2d 335, 337 (1967). In order to satisfy the statutory standard for assertion of long arm jurisdiction, however, it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. Instead, we have held the statute to be satisfied when only the resulting injury occurs in this state. *E.g., McAvoy*, 757 P.2d at 635; *Le Manufacture Francaise v. District Court*, 620 P.2d 1040, 1044 (Colo.1980); *Jenner & Block v. District Court*, 197 Colo. 184, 186, 590 P.2d 964, 965-66 (1979).

*Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235-36 (Colo. 1992).

With the possible exception of Cook, it is clear that Defendant's contacts with Colorado were not so systematic or general to support a showing of general jurisdiction.[5] *Goettman*, 176 P.3d at 69. Thus, I apply a minimum contacts analysis to determine: "(1) whether the defendant 'purposefully directed' his activities at the residents of the forum state; and (2) whether the litigation 'arises out of' the defendant's forum-related conduct." *Id.* But, "the commission of a tort, in itself, creates a sufficient nexus between a defendant and the forum state that satisfies the

---

[5] Ms. Dierenbach testified that a condition of Cook's employment was that he "appear" as if he lived in Colorado. She indicated that all of Plaintiff's senior officers were required to live in the state, but that Cook desired to keep his family in Florida. Plaintiff agreed to allow Cook to commute from Florida, so long as it appeared that he was living in Colorado. For example, Cook was required to attend all meetings in person. Ms. Dierenbach testified that she believed that Cook's Colorado "vacation home" was used by Mr. Cook as his residence when he was in Colorado on business.

3

due process inquiry and establishes specific jurisdiction." *Id.* (*citing Classic Auto Sales*, 832 P.2d at 237).

Cook signed the Nondisclosure Agreement which contains a Colorado forum selection clause. He also was a senior officer of Plaintiff, a Colorado-headquartered company, for ten years. The Complaint alleges that Cook breached his Nondisclosure Agreement, and also alleges independently that Cook misappropriated Plaintiff's trade secrets. Any injury to Plaintiff as a result of the misappropriation will occur in Colorado. Such is sufficient for personal jurisdiction over Cook. *Classic Auto Sales*, 832 P.2d at 235. This would be true regardless of whether Plaintiff is entitled to enforce Cook's Nondisclosure Agreement. Because any injury resulting from Cook's alleged tortious conduct will occur in Colorado, the court has personal jurisdiction over him.

Cook is alleged to have been employed by, and acting on behalf of, his current employer at the time of the complained of actions. Because there is personal jurisdiction over Cook, there is personal jurisdiction over Charter One. "Under Colorado's long-arm statute, a nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the defendant's agent." *Goettman*, 176 P.3d at 67. "The jurisdictional facts must connect the actions of the agent to the principal by . . .the commission of a tortious act within the state." *Id.* As previously discussed, the fact of an injury in the state arising from the tortious action is sufficient for the exercise of personal jurisdiction. *Classic Auto Sales*, 832 P.2d at 235. Charter One therefore is subject to this court's jurisdiction.

Farinacci is a closer question. He apparently did not sign a Nondisclosure Agreement. Although he agrees that he was employed by Plaintiff, he spent all of his time in Ohio managing the Glidden House Inn. (Decl. of Tom Farinacci (Ex. C to Motion) at ¶¶4, 6 and 7.) He met with "Plaintiff's representatives relative to the time period stated within Plaintiff's complaint" only in Ohio. *Id.* ¶7. Plaintiff has alleged that Farinacci misappropriated trade secrets and interfered with Plaintiff's contractual relationship with the Glidden House Inn. These alleged acts occurred while Farinacci was employed by Plaintiff. Plaintiff claims that the "conspiracy theory" of jurisdiction gives the court jurisdiction over Farinacci. But the very case Plaintiff relies on indicates that the conspiracy theory has not been recognized in Colorado. *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgt.*, 166 P.3d 166, 178 (Colo. App. 2007). Nevertheless, the allegations in the Complaint state contractual interference and trade secret claims against Farinacci that are directed against Plaintiff in Colorado. Because the alleged injury from Farinacci's actions occurred in Colorado, the court has personal jurisdiction over him. *Classic Auto Sales*, 832 P.2d at 235.

4

5

      As to all of the defendants, based on the facts adduced at the hearing as well as those alleged in the Complaint, I conclude that "it does not offend notions of fair play and substantial justice to require the Defendants to defend against this lawsuit in Colorado. *D&D Fuller CATV Const., Inc. v. Pace*, 780 P2d 520, 525-26 (Colo. 1989).

      Defendants' Motion to Dismiss is DENIED.

      ENTERED this 21st day of February, 2012.

                                                     BY THE COURT:

                                                     J. Eric Elliff
                                                     District Court Judge